IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 5:10-CV-031-RLV-DCK

| | |
|---|---|
| MELBA D. BURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 18) and Defendant's "Motion For Summary Judgment" (Document No. 22). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

### I. BACKGROUND

Plaintiff Melba D. Burch ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 18-2). On December 21, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, alleging an inability to work due to a disabling condition beginning May 29, 2005. (Transcript of the Record of Proceedings ("Tr.") 11). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on March 19, 2007, and again after

reconsideration on July 10, 2007. (Tr. 11). Plaintiff filed a timely written request for a hearing on July 26, 2007. (Tr. 11).

On March 31, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Joseph E. Brezina ("ALJ"). (Tr. 10). On August 31, 2009, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 8-17). Plaintiff filed a request for review of the ALJ's decision on September 7, 2009, which was denied by the Appeals Council on January 11, 2010. (Tr. 1-3). The August 31, 2009 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on March 10, 2010. (Document No. 1). "Plaintiff's Motion For Summary Judgment" (Document No. 18) and "Plaintiff's Brief Supporting Motion For Summary Judgment" (Document No. 18-2) were filed November 4, 2010; and Defendant's "Motion For Summary Judgment" (Document No. 22) and"Memorandum In Support Of The Commissioner's Motion for Summary Judgment" (Document No. 23) were filed January 27, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard Voorhees is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is

2

supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes at any time between May 29, 2005, and August 31, 2009.[1] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving that she was

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

3

disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from May 29, 2005, through the date of his decision, August 31, 2009. (Tr. 17).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was <u>not</u> disabled because she could return to her past work. (Tr. 16).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since May 29, 2005, her alleged disability onset date. (Tr. 13). At the second step, the ALJ

4

found that Plaintiff's disorder of the back, and obesity, were severe impairments. (Tr. 13).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 13-14).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform the full range of medium work, with the following limitations:

> stand and walk for 6 hours in an 8 hour day; she can sit for 6 hours in an 8 hour day; she can lift and carry 50 pounds occasionally and 25 pounds frequently; and the claimant has no postural, manipulative, environmental, visual, or communicative limitations.

(Tr. 14). In making his finding, the ALJ considered Plaintiff's testimony regarding her impairments' "intensity, persistence and [the] limiting effects of these symptoms" and found they were not credible to the extent they were inconsistent with the above residual functional capacity assessment. (Tr. 15).

At the fourth step, therefore, the ALJ found that Plaintiff could perform her past relevant work as a knitter, which most closely resembled the Knitting Machine Operator occupation, as identified in the Dictionary of Occupational Titles ("DOT"). (Tr. 16). Since the ALJ determined that Plaintiff was able to perform her past relevant work, he did not proceed to the fifth step of the analysis. (Tr. 16). Therefore, the ALJ concluded at the fourth step that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between May 29, 2005, and the date of his decision, August 31, 2009. (Tr. 16-17).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Plaintiff on appeal to this Court alleges that the ALJ erred by failing to afford the proper weight to the medical opinions of the Plaintiff's treating physicians. (Document No. 18-2, p. 3). The undersigned will discuss this contention in detail below. The Court in the end is satisfied that the ALJ's decision is supported by substantial evidence in the record.

### A. ALJ's Consideration of Plaintiff's Treating Physicians' Opinions

In her only assignment of error, Plaintiff argues that the ALJ "erred in the failure to correctly apply the facts in weighing the medical opinion of the Plaintiff's treating physician and medical professionals." (Document No. 18-2, p.3). In particular, Plaintiff alleges that the "ALJ gave no weight to the professional medical opinions of treating medical providers." (Document 18-2, p.3-4).

First, Plaintiff argues that the ALJ failed to properly weigh the statement made by Dr. Alden Milam on January 12, 2006, reporting that Plaintiff "should avoid lifting over 15 pounds, bending, stooping and twisting at the waist and not to sit for more than a half hour at a time." (Document 18-2, p.4). The second treating physician's opinion in question involved Dr. David Spivey's August 1, 2006, statement, "There are some restrictions that were suggested by Dr. Milan and I concur with these regarding lifting, bending, and stooping." (Document 18-2, p. 4) (citing Tr. 215). Finally, Plaintiff argues that the ALJ failed to properly weigh the statement made by Dr. Ralph Maxy on February 27, 2007, that he "assigned the Plaintiff to permanent light duty restrictions." (Document 18-2, p.4). Plaintiff argues that "the conclusions of [these] three treating physician[s] are in direct conflict with the AL[J's] conclusion, " since the limitations identified by these physicians would "prohibit any ability to engage in a full range of medium work activity as found by the ALJ." (Document 18-2, p.4).

6

In support of this contention, Plaintiff relies on factors in SSR 96-2p, which set forth when to give a treating physician's opinion controlling weight:

> (1) The opinion must come from a "treating source," as defined in 20 CFR §§404.1502 and 416.902;
>
> (2) The opinion must be a "medical opinion." Under 20 CFR §§404.1527(a) and 416,927(a), "medical opinions" are opinions about the nature and severity of an individual's impairments(s) and are the only opinions that may be entitled to controlling weight;
>
> (3) The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion;
>
> (4) Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

SSR 96-2p, "Giving Controlling Weight to Treating Source Medical Opinion," 1996 WL 374188 at *2, (July 2, 1996).

Defendant presents a multiple-point answer to Plaintiff's general contention that the ALJ did not afford proper weight to the opinions of the three treating physicians mentioned above, with specific attention given to each of the treating physicians' opinions. For the sake of clarity, the undersigned will address each treating physician's medical opinion separately.

**1. Dr. Milam**

Plaintiff argues that the ALJ did not properly consider Dr. Milam's statement regarding Plaintiff that "[w]ith respect to her work restriction, I would avoid lifting over 15 pounds, bending, stooping and twisting at the waist. She should not sit for more than a half hour at a time without getting up." Defendant responds by noting that the report including this statement was not in the

7

record at the time the ALJ made his decision. (Document 23, p.8; Document No. 18-1, p.3). In fact, Dr. Milam's report was submitted for the first time by attachment to "Plaintiff's Motion For Summary Judgment" on appeal to this Court. (Document No. 18-1). Defendant argues that, under 4th Circuit precedent, a district court is not permitted to consider evidence which was not available to the ALJ. (Document No. 23, p.9) (citing Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996)). Plaintiff acknowledges in her brief that Dr. Milam's statements were not in the record used by the ALJ to determine Plaintiff's disability status. (Document 18-2, p.4).

Defendant notes that in order for a case to be remanded by the district court based upon the introduction of new evidence, that evidence must be "new, material and there must be good cause for failing to present the evidence earlier." (Document 23, p.9) (citing 42 U.S.C. §405(g)). Defendant argues that, while the evidence contained in Dr. Milam's report is new and material, Plaintiff does not show good cause for the failure to present the evidence earlier. (Document 23, p. 9). As an example of an adequate showing of good cause, Defendant points to the 7th Circuit, which found a showing of good cause when it was established by the Plaintiff that the new evidence was not available until after the conclusion of the proceedings. (Document 23, p. 10) (citing Waite v. Bowen, 819 F.2d 1356, 1361-1362 (7th Cir. 1987)). Here, Dr. Milam's opinion was available to the Plaintiff in early 2006, and in any event, Plaintiff offered no explanation.

The undersigned finds the Defendant's argument regarding the untimely submission of Dr. Milam's opinion into the record to be persuasive. In particular, the undersigned notes that Plaintiff fails to provide any explanation for why this information was not included in the evidence presented to the ALJ at the time of the proceeding. (Document No. 18-2, p.4). Since Plaintiff fails to provide any evidence of good cause as to why this information was not originally included in the record, the undersigned will not recommend that the case be remanded based on this untimely report.

Moreover, it appears that the ALJ relied on substantial evidence in the record, including Dr. Margaret Parrish's assessment in July 2007, that seems to contradict Dr. Milam's report from January 2006.

### 2. Dr. Spivey

Next, Defendant addresses Dr. Spivey's statement that he agreed with the restrictions of Dr. Milam "regarding lifting, bending, and stooping" (Document 18-2, p.4) by observing in a footnote that this "non-specific comment concurring with Dr. Milam's unsubmitted opinion is equally unavailing." (Document 23, p.10, n.5). Defendant notes that this statement does not contribute to the medical record, as it refers to an unsubmitted opinion, and concludes by arguing that it is "devoid of any meaning as its substance rests in a report that Plaintiff never submitted." (Document 23, p. 10).

The undersigned again finds the Defendant's argument persuasive. As Defendant noted, Dr. Spivey did not "articulate any specific limitations that the ALJ failed to weigh." (Document No. 23, p.10). In the sentence preceding Dr. Spivey's reference to Dr. Milam's report, he writes, "I cannot really state that she is . . . ready for a functional capacity examination because until she has lost weight and/or had the surgery we cannot really state that she is MMI [at her maximum medical improvement status]." (Tr. 215). Dr. Spivey essentially acknowledged that he was unable to make a determination about Plaintiff's residual functional capacity at that time, and he then referenced the opinion of Dr. Milam and noted that he "concur[s] with these regarding lifting, bending, and stooping." (Tr. 215). Although Plaintiff assumes this Spivey report references the "new" Milam report dated January 12, 2006, the report is not explicit in this regard, and makes no reference to Dr. Milam's proposed restrictions to twisting or sitting. (Tr. 215).

The Spivey report in question is vague, declines to definitively make a judgment about Plaintiff's capacity for employment, and refers the reader back to the opinion of Dr. Milam, which was not in the record at the time of the proceeding. (Document 18-2, p.4). According to SSR 96-2p, "a case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion." SSR 96-2p, 1996 WL 374188 at *1 (July 2, 1996). Without more information, the undersigned does not find that the ALJ could have reasonably found Dr. Spivey's statement to contradict the other medical opinions within the record, largely because it is incomplete and unclear on its face without the referenced opinion of Dr. Milam to support it.

Furthermore, Plaintiff's assertion that the "ALJ gave no weight" to Dr. Spivey's medical opinion is without merit. In fact, the ALJ specifically notes that he "has given significant weight to the medical findings of the claimant's treating and examining physicians (including those of the consultative medical examiners) because their assessments of the claimant are supported by the evidence of record." (Tr. 16 (citing Tr. 214-218)). The cited findings noted by the ALJ include Dr. Spivey's opinions.

### 3. Dr. Maxy

Finally, Defendant acknowledges that the ALJ did not explain or provide specific reasons for the weight that he afforded to Dr. Maxy's statements about light work. In pertinent part, Dr. Maxy's statement provides:

> With respect to work restrictions, I do not have a functional capacity evaluation to guide the long-term recommendations. The patient could not undergo this. We, therefore, have arbitrarily assigned her light duty restrictions long-term and permanently.

(Tr. 225). Defendant "concedes that if Dr. Maxy's arbitrary statement constitutes a medical opinion, then the ALJ technically erred in failing to discuss the weight afforded." (Document 23, p.5).

10

Defendant then argues that even if Dr. Maxy's statement does qualify as "medical opinion," the doctrine of harmless error should be utilized by this Court to excuse the ALJ's failure to specifically explain the weight he afforded this treating physician's opinion. (Document 23, pp.6-7).

Defendant cites to Camp v. Massanari, in which the 4th Circuit held that an ALJ's error was harmless unless the Plaintiff could demonstrate that he had been prejudiced by it. (Document No. 23, p.6) (citing Camp v. Massanari, 22 Fed.Appx. 311 (4th Cir. 2001)) ("Additionally, although Camp argues that the Administrative Law Judge rejected Dr. Richard Munschy's opinion without properly seeking additional information from the doctor, she has made no showing of prejudice. Thus, any error on the part of the ALJ was harmless."). Defendant further contends that Plaintiff cannot show prejudice if "he [the ALJ] would have reached the same result notwithstanding his initial error." (Document No. 23, p.6) (quoting Mickles v. Shalala, 29 F.3d 918, 921) (4th Cir. 1994)). Defendant encourages the use of the harmless error doctrine in this case with respect to Dr. Maxy's opinion because of its "arbitrary nature and the failure to define 'light-duty restrictions' with any specific functional limitations. " (Document 23, p.7).

The undersigned finds the Defendant's argument on this issue to be persuasive. The ALJ relied upon the medical evidence proffered by all the treating physicians when making his conclusion about the level of work that the Plaintiff is capable of doing. (Tr. 16) ("The undersigned has given significant weight to the medical findings of the claimant's treating and examining physicians . . . because their assessments of the claimant are supported by the evidence of record.). Indeed, the ALJ took care to cite to all evidence within the record that supported his final determination that Plaintiff was capable of the "full range of medium work activity on a sustained basis." (Tr. 16). For example, the ALJ noted within his opinion the findings of Dr. Aregai Girmay

by observing, "[t]he claimant also demonstrated the ability to ambulate without an assistive device, and she exhibited full motor strength of all extremities. Dr. Girmay felt that the claimant had an exaggerated pain response to paraspinal palpation." (Tr. 16). In addition, the ALJ considered the opinion of Dr. Bruce Goodson by noting, "Dr. Goodson felt that the claimant had only moderate limitations, and that weight loss and smoking cessation would alleviate her pain significantly." (Tr. 16).

Finally, the ALJ afforded great weight to the opinion of Dr. Margaret Parrish, a state agency medical consultant who performed the residual function evaluation on Plaintiff. The ALJ noted, "Dr. Parrish determined that the claimant retained the ability to perform a full range of medium work activity on a sustained basis; and the undersigned agrees with Dr. Parrish's determination because it is supported by the objective medical evidence contained in the record." (Tr. 16). In Dr. Parrish's medical opinion, she specifically acknowledged that Dr. Maxy's opinion about Plaintiff's limitations was different from her own findings. (Tr. 268).

Since the ALJ afforded great weight to the medical findings of Dr. Parrish, and her medical opinion acknowledged that her conclusion differed from the conclusion of Dr. Maxy, it can be inferred that the ALJ was aware of the discrepancy between the two opinions and chose to afford more weight to the opinion that was supported by the objective findings of the residual function evaluation. Moreover, the ALJ specifically cites Dr. Maxy in finding that Plaintiff "was reluctant to undergo a functional capacity evaluation." (Tr. 15). While it is true that Dr. Maxy's statement reaches the conclusion that Plaintiff should be limited to light work activity, this opinion is proffered without the support of the residual function evaluation that aids a physician in making this type of finding. (Tr. 225).

Once the Plaintiff underwent the residual function evaluation, Dr. Parrish made the determination, based upon the results of that medical evaluation, that Plaintiff was capable of performing a full level of medium work activity. (Tr. 262-269). The ALJ concluded in his opinion that "Dr. Parrish determined that the claimant retained the ability to perform a full range of medium work activity on a sustained basis; and the undersigned agrees with Dr. Parrish's determination because it is supported by the objective medical evidence contained in the record." (Tr. 16). The undersigned will not recommend remand based on Plaintiff's argument regarding Dr. Maxy, because Dr. Maxy himself admits that his opinion is arbitrary and lacks the appropriate medical testing to support it. (Tr. 225). If the ALJ erred by failing to specifically refer to Dr. Maxy's arbitrary assignment of light duty restrictions – and Defendant certainly acknowledges that a more thorough explanation might have been better – such error is harmless.

In short, the undersigned is persuaded that the ALJ's decision is based upon the complete record with all of the medical findings, and that the ALJ relied upon substantial evidence in reaching his decision that Plaintiff was not disabled from her past relevant work. See 20 C.F.R. §404.1520(g). Plaintiff's argument that the ALJ committed "clear error" by failing to mention Dr. Milam's opinion which was not before him, or Dr. Spivey's vague concurrence with Dr. Milam, is without merit. Furthermore, those opinions, along with Dr. Maxy's arbitrary assignment, appear to be inconsistent with the record as a whole and the substantial evidence relied upon by the ALJ in reaching his decision about disability.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the

13

Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 18) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 22) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard Voorhees.

**IT IS SO RECOMMENDED**.

Signed: July 5, 2011

David C. Keesler
United States Magistrate Judge